UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **IRMA MCDONALD AND PAULA JACKSON** | **CASE NO.: 2:24-cv-1083** |
| **VERSUS** | **JUDGE:** |
| **STRATIGOS DYNAMICS, INC.** | **MAG. JUDGE:** |

### COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT

NOW INTO COURT, through undersigned counsel, come plaintiffs Irma McDonald and Paula Jackson, both of whom are majors domiciled in Calcasieu Parish, Louisiana, who bring this action against their employer, defendant Stratigos Dynamics, Inc. ("SDI"), for failing to pay the plaintiffs all of their minimum wage and overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*. In support of this action, the plaintiffs respectfully represent as follows:

1.

Made defendant herein is Stratigos Dynamics, Inc. ("SDI"), a Louisiana corporation, which may be served through its registered agent United States Corporation Agents, Inc., 1100 Poydras Street, Suite 2900, New Orleans, Louisiana 70163.

2.

SDI provides armed and unarmed security and patrol services at multiple locations in states across the Gulf Coast, including Louisiana, Mississippi, and Texas.

3.

SDI is domiciled in, has its principal place of business in, and operates and conducts business in Calcasieu Parish, which is within this judicial district. Much of SDI's wrongful conduct

and violations of the FLSA alleged in this Complaint as to the plaintiffs also occurred within this judicial district. Therefore, the Western District of Louisiana is the proper venue for this action pursuant to 28 U.S.C. § 1391.

4.

The plaintiffs bring this action against SDI for unpaid minimum wage and overtime compensation, liquidated damages, reasonable attorney fees and costs, and any and all other legal or equitable relief available under the FLSA, 29 U.S.C. § 201, *et seq*.

5.

This Court has jurisdiction over the plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and the FLSA.

**FACTUAL ALLEGATIONS RELATED TO ALL PLAINTIFFS**

6.

The plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

7.

Plaintiffs were employed by SDI within the three years prior to the filing of this Complaint.

8.

At all times pertinent to the allegations of this Complaint, SDI had an arrangement with Sasol under which SDI's employees provided security services at the Sasol Lake Charles Chemical Complex located in West Lake, Louisiana. The plaintiffs worked for SDI at the Sasol Lake Charles Chemical Complex

9.

At all times pertinent to the allegations of this Complaint, SDI compensated the plaintiffs for their work on an hourly basis.

10.

During their employment with SDI, the plaintiffs' weekly schedule generally consisted of three 12-hour shifts on either Sunday, Monday, and Tuesday, or on Thursday, Friday, and Saturday, as well as one six-hour shift on Wednesday. Thus, the plaintiffs typically were assigned 42 hours of total scheduled shift time each workweek.

11.

In addition to their scheduled shift times, SDI mandated that the plaintiffs be present 30 minutes before their shifts began to attend pre-shift meetings and handle other work-related matters. This pre-shift attendance requirement is imposed upon all SDI security guards, officers, team leaders, and other SDI employees, regardless of which shift they work, such that the plaintiffs were required to be present 30 minutes before their shift was scheduled to begin.

12.

During these pre-shift meetings that begin 30 minutes before the scheduled shift time, the SDI team leader reviews information related to the performance of the employees' job duties that day, provides updates on any notable events or incidents that occurred during the previous shift so that the incoming employees are aware of them, and also provides information about individuals who are expected to arrive during the day or anything else of note that might be happening over the course of the upcoming shift so the employees are prepared for their shift.

13.

Following the pre-shift meeting, the employees are required to go to their assigned stations for that day, where they are then allowed to clock in for the day using mobile applications, including m-Post and Track-Tik, which SDI employees are required to have on their personal cell phones. However, SDI forbids its employees from clocking in until 10 minutes before their shifts begin. Thus, for a shift that begins at 5:00 a.m., that employee is not allowed to clock in using the mobile application until at least 4:50 a.m. Upon information and belief, this rule was imposed by SDI to prevent its employees from being paid for all of the time they were entitled to receive for the time they worked before their scheduled shift start time. Even though the plaintiffs would clock in through mobile applications including m-Post and Track-Tik up to 10 minutes before the start of their scheduled shift time, they still were only paid for work hours beginning at the scheduled shift time, and not from when they clocked in.

14.

Despite mandating that all employees be present 30 minutes before their shifts began to attend pre-shift meetings and handle other work-related matters, SDI had a policy and practice of not paying its employees for any of the time during which SDI required them to be present before their shift start time. Instead, SDI pays its employees only for the hours that are specifically identified as their scheduled shift time.

15.

For example, on days that an employee's scheduled shift was 5:00 a.m. to 5:00 p.m., SDI paid that employee for only 12 hours, even though the employee was required to arrive 30 minutes before her 5:00 a.m. shift start time to attend mandatory pre-shift meetings and perform other work-related duties. Thus, the plaintiffs were suffered or permitted to work without pay for 30

minutes each day before their scheduled shifts, during which unpaid time they were engaged in mandatory employment related tasks at SDI's direction.

16.

Additionally, on some occasions, the plaintiffs were required to stay after their scheduled shifts ended. SDI also failed to pay the plaintiffs for that post-shift time during which it required them to continue working.

17.

When an employee's shift ends and they are relieved by the employee who is assigned to that station for the next shift, at that point she uses the mobile application to clock out. However, for various reasons, including delays in arriving at to the assigned station or pre-shift meetings that run longer than anticipated, the employee who is taking over that station for the next shift does not always arrive exactly at the time their scheduled shift is to begin and when the outgoing employee's shift is scheduled to end. On those occasions, the outgoing employee at that station must remain later than their scheduled shift end time. However, despite on occasion having to stay later than the scheduled shift end time to continue performing work-related tasks, SDI still only pays its employees for their scheduled shift times. Thus, even on days when an employee is required to stay later than her or his shift end time, and even when they are clocked out using the mobile application after their shift end time, he or she was still only paid for time worked up to their shift end time, and not for the time they continued to perform work for SDI afterwards.

18.

At all times material to the allegations of this Complaint, SDI failed to comply with the FLSA by (1) requiring the plaintiffs to be present for and attend pre-shift meetings and handle other work-related matters every day 30 minutes before their shifts began without pay, and (2)

requiring the plaintiffs to continue working without pay on some occasions after their shifts had ended.

19.

SDI's failure to pay the plaintiffs for all of the time they worked constituted a violation of both the minimum wage and overtime provisions of the FLSA.

20.

For workweeks in which a plaintiff worked less than 40 hours, and in which the additional time that the plaintiff was required by SDI to work before and after her shift without pay did not result in that plaintiff working in excess of 40 hours, SDI's failure to pay the plaintiff for the additional time worked constitutes a violation of the FLSA's minimum wage provisions.

21.

For workweeks in which a plaintiff worked in excess of 40 hours, and/or in which the additional time that the plaintiff was required by SDI to work before and after her shift without pay resulted in that plaintiff working in excess of 40 hours, SDI's failure to pay the plaintiff for the additional time worked constitutes a violation of the FLSA's overtime provisions.

22.

SDI willfully operated under a scheme to deprive the plaintiffs of proper minimum wages and/or overtime compensation by failing to pay them for all hours worked as required under federal law.

23.

SDI knew that the plaintiffs performed work that required proper payment of minimum wage and/or overtime compensation.

24.

SDI was aware of its unlawful payment practices and chose to disregard the consequences of its actions.

25.

The plaintiffs were entitled to be paid for all time worked for SDI, including time and one-half their regular rate of pay for each hour worked in excess of 40 hours per work week.

26.

The records, to the extent any exist, concerning the number of hours worked, amounts paid to the plaintiffs, and other information relevant to the allegations of this Complaint, are in the possession and custody of SDI, which as an employer is required by law to maintain such records, including pursuant to 29 U.S.C. § 211 and 29 C.F.R. Part 516.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF IRMA MCCDNALD

27.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

28.

Plaintiff Irma McDonald was employed by SDI beginning on or about August 14, 2021, and is currently still employed.

29.

During her employment with SDI, Ms. McDonald worked as an unarmed guard and then team leader and at the Sasol Lake Charles Chemical Complex.

30.

During her employment with SDI, Ms. McDonald had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m.

31.

At all times during her employment with SDI, Ms. McDonald was required to attend pre-shift meetings which began approximately 30 minutes before every scheduled shift.

32.

SDI did not pay Ms. McDonald for any of the time she attended the mandatory pre-shift meetings each day of her employment.

33.

Ms. McDonald understood that attendance at the pre-shift meetings was mandatory. She was told that because she did not take a lunch break, it was okay to attend pre-shift meetings. While working in a supervisory role, she would always be reminded by other management that pre-shift was required to make sure all the staff understood their duties and responsibilities at each assigned post daily.

34.

Ms. McDonald was demoted on or around July 3, 2024, because she was bringing up issues during the pre-shift meeting related to the work place. She was told that was not a good time to bring up those issues. However, Ms. McDonald was doing what she had been taught to do, which was to discuss issues and problems during the pre-shift meetings.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
## TO PLAINTIFF PAULA JACKSON

35.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

36.

Plaintiff Paula Jackson was employed by SDI on or around March 23, 2023, and her employment ended on or around the middle of July 2024.

37.

During her employment with SDI, Ms. Jackson worked as an unarmed guard at the Sasol Lake Charles Chemical Complex.

38.

During her employment with SDI, Ms. Jackson had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

39.

At all times during her employment with SDI, Ms. Jackson was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

40.

SDI did not pay Ms. Jackson for any of the time she attended the mandatory pre-shift meetings each day of her employment.

41.

Ms. Jackson understood that attendance at the pre-shift meetings was mandatory. She and other coworkers were often told by management that disciplinary actions would occur due to

failure to attend pre-shift meetings. In fact, Ms. Jackson was assigned points as discipline for arriving late for pre-shift meetings.[1]

# COUNT I
## Unpaid Minimum Wage and Overtime Wages Under the FLSA
### *By All Plaintiffs*

42.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

43.

The plaintiffs each individually assert a right to recovery under this Count I for SDI's common scheme in failing to pay each of them minimum wage and overtime wages for all hours worked, in violation of the FLSA.

44.

SDI is an "employer" and an "enterprise" and is engaged in "commerce" within the meaning of the FLSA. 29 U.S.C. § 203(b), (d), (r), and (s).

45.

The FLSA requires covered employers like SDI to pay non-exempt employees like the plaintiffs no less than $7.25 per hour for all hours worked, as well as one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 206 and 207.

---

[1] SDI assigns points to employees as discipline for being late, leaving early or not showing up for work. After accruing a defined number of points over a defined period of time, an employee is subject to various escalating levels of discipline, including verbal or written warnings, suspension, and ultimately termination

46.

The plaintiffs regularly worked more than 40 hours per week for SDI, but SDI did not properly compensate them for the statutory minimum wage owed to them for all regular hours worked, nor the statutory amounts due for all of their overtime hours as required by the FLSA.

47.

SDI did not and has not made a good-faith effort to comply with the FLSA as it relates to the compensation of the plaintiffs.

48.

SDI knew that the plaintiffs worked regular and overtime hours without proper compensation, and it willfully failed and refused to pay the plaintiffs wages at the required minimum wage and overtime rates for all hours worked. *See* 29 U.S.C. § 255.

49.

SDI's willful failure and refusal to pay the plaintiffs the mandatory minimum and overtime wages for all time worked violates the FLSA. 29 U.S.C. § 206 and 207.

50.

As a direct and proximate result of SDI's unlawful practices, the plaintiffs suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum and overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper.

51.

The plaintiffs are victims of SDI's repeated, systematic, and consistent illegal policies that have resulted in willful violations of their rights under the FLSA, which have caused significant damage to the plaintiffs.

**PRAYER FOR RELIEF**

52.

**WHEREFORE**, plaintiffs Irma McDonald and Paula Jackon pray for relief as follows:

a) A finding that SDI's violations of the FLSA are willful pursuant to 29 U.S.C. § 255(a);

b) Judgment against SDI for an amount equal to each of the plaintiffs' unpaid back wages at the applicable minimum wage and/or overtime rates;

c) An amount equal to each of the plaintiffs' damages as liquidated damages;

d) All costs and attorneys' fees incurred in prosecuting this suit;

e) An award of any pre- and post-judgment interest;

f) All further relief as the Court deems just and equitable.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors at Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
Telephone: (225) 932-9221
FAX: (225) 932-9286

By: *s/ Roy Bergeron, Jr.*
Eulis Simien, Jr., Bar # 12077
eulissimien@simien.com
Jimmy Simien, Bar # 1598
jimmysimien@simien.com
Roy Bergeron, Jr., Bar # 33726
roybergeron@simien.com